UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>                      Plaintiff,<br><br>v.<br><br>Joshua Lamar Reed,<br><br>                      Defendant. | Case. No. 24-cr-38 (JRT/JFD)<br><br>ORDER<br>and<br>REPORT AND<br>RECOMMENDATION |

## I.    Introduction

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for an order on Defendant Joshua Lamar Reed's Motion to Disclose and Make Informant Available for Interview (Dkt. No. 27) and a report and recommendation on his Motion to Suppress Evidence Obtained as a Result of Unlawful Search and Seizure (Dkt. No. 25) and Motion to Suppress Evidence Obtained as a Result of Unlawful Search and Seizure – Tracking Warrant (Dkt. No. 28).

Mr. Reed is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Indictment at 1, Dkt. No. 1.) This charge stems from Mr. Reed's arrest on a federal arrest warrant, which took place on January 26, 2024, in Saint Paul, Minnesota. (*See* Gov't Post-Hr'g Mem. at 2, Dkt. No. 41.) Incident to that arrest, Mr. Reed was searched by law enforcement officers who seized from him a loaded Smith and Wesson .380 caliber semiautomatic handgun and approximately 111 pills that were subsequently confirmed to contain fentanyl. (*See id.* at 3.)

1

The Court held a motions hearing on July 26, 2024. Assistant United States Attorney Andrew S. Dunne represented the United States. Assistant Federal Defender Jean M. Brandl represented Mr. Reed. After the hearing, the parties filed post-hearing briefs (Dkt. Nos. 38, 39, 41, 42). The Court took the currently pending motions under advisement on August 27, 2024, the date of the most recent filing.

Mr. Reed seeks to suppress evidence seized as a result of a Tracking Warrant on his cellular phone, number 763-340-xxxx. (Gov't Ex. 1.) That warrant was issued to Minneapolis Police Department ("MPD") Officer Jeffrey Werner on January 10, 2024 by Hennepin County District Judge Amber Brennan. Location information received pursuant to the warrant allowed the police to find Mr. Reed, who was arrested in Saint Paul on January 26, 2024. Mr. Reed was searched incident to his arrest. That search turned up a gun and approximately 111 fentanyl pills. Mr. Reed contends that the gun and the fentanyl should be suppressed because the Tracking Warrant, which allowed law enforcement to track Mr. Reed to the location where he was arrested, was not supported by probable cause. (Def.'s Post-Hr'g. Mem. Supp. Mot. Suppress at 1, Dkt. No. 38.) Mr. Reed further argues that the good faith exception of *United States v. Leon* does not apply "because the officer who drafted the tracking warrant was the same person who used it to locate Mr. Reed." (*Id.* at 5–6.) As a result, Mr. Reed contends, the affiant was not relying on the assessment of a detached and neutral judge, but rather on his own assessment. (*Id.* at 6.) On January 31, 2024, Saint Paul Police Sergeant Tim Moore obtained a search warrant, signed by Ramsey County District Judge David Brown, for Mr. Reed's Facebook account. (Gov't Ex. 2.) Mr. Reed also asks the Court to suppress evidence seized pursuant to that warrant, claiming

2

that photographs referenced in Sergeant Moore's warrant application could only have come from a warrantless search of Mr. Reed's cellular phone. (Def.'s Mot. Suppress at 1, Dkt. No. 25.)[1]

In its post-hearing memorandum, the United States responds that the Tracking Warrant affidavit submitted by Officer Werner to Judge Brennan in Hennepin County provided a "substantial basis to conclude that probable cause existed to believe" both that the cellular phone, number 763-340-xxxx, was being used by Mr. Reed, and that Mr. Reed had an outstanding warrant for his arrest. (Gov't Post-Hr'g. Mem. Resp. Mot. Suppress at 7, Dkt. No. 41.) The United States also argues that even if the Tracking Warrant were found not to have been supported by probable cause, the affiant relied on the warrant in good faith and his reliance was objective reasonable, thereby allowing the United States to avail itself of the *Leon* good faith exception to the exclusionary rule. (*Id.* at 7–8.)

**II.     Relevant Facts**

No witnesses testified at the motions hearing which took place on July 26, 2024. Consequently, the facts in this section are gleaned exclusively from the United States' hearing exhibits, which are the Tracking Warrant for telephone number 763-340-xxxx issued on January 10, 2024 (Gov't Ex. 1); and the Facebook Warrant issued on January 31, 2024 (Gov't Ex. 2).

---

[1] Sergeant Moore obtained a search warrant for Mr. Reed's cellular phone, issued by Ramsey County District Judge Maria Mitchell, but not until February 13, 2024, after Judge Brown had issued the search warrant for Mr. Reed's Facebook account. (*See* Proposed Gov't Ex. 3 at 6, Dkt. No. 30-3.) Proposed Government Exhibit 3 was not offered or introduced into evidence at the motions hearing.

A.      **Tracking Warrant**

The facts recited in this section were set forth in the application and affidavit submitted by MPD Officer Jeffrey Werner. (Gov't Ex. 1 at 1.) Officer Werner was assigned to the MPD's Gun Investigation Unit and was conducting an ongoing felony investigation of Mr. Reed for illegal firearms possession. (*Id.* at 2–3.) Officer Werner was contacted by a confidential reliable informant (CRI) who told him that "within the last 72 hours they saw a male they know by the name Hyfee that was in possession of a semiautomatic handgun with an extended magazine . . . on the street, in St. Paul" and that this individual had a cellular phone, the number of which was 763-340-xxxx. (*Id.* at 3–4.) The CRI had provided information to law enforcement for the past several months that had proven to be reliable, timely, and accurate. (*Id.* at 4.) The CRI's information had led to the recovery of narcotics and firearms and to charges of narcotics and firearms crimes. (*Id.*) The CRI was under contract with law enforcement and was being paid to provide information. (*Id.*)

Officer Werner subsequently identified "Hyfee" as Mr. Reed by presenting a "MN DMV" photograph of Mr. Reed to the CRI, who confirmed Mr. Reed was the man he knew as "Hyfee." (*Id.*) Officer Werner then investigated Mr. Reed's criminal history and discovered that Mr. Reed had two previous felony convictions, which precluded him from possessing firearms, as well as an active federal warrant for his arrest. (*Id.*)

On January 10, 2024, Officer Werner submitted the application and affidavit for a tracker on the cellular phone 763-340-xxxx, asserting that there was probable cause to believe that the phone belonged to Mr. Reed, and probable cause to believe that execution of the warrant would result in the discovery of evidence of a crime, namely, Mr. Reed's

4

possession of a firearm as a felon. (*Id.* at 5.) The application and affidavit also noted that monitoring Mr. Reed's whereabouts pursuant to the Tracking Warrant would allow law enforcement "to arrest Reed for his outstanding Federal arrest warrant." (*Id.*) Judge Brennan issued the Tracking Warrant on January 10, 2024.

### B. Facebook Warrant

Saint Paul Police Sergeant Tim Moore submitted the application and affidavit for the Facebook Warrant and included the following factual averments. (Gov't Ex. 2.) Law enforcement had arrested Mr. Reed on January 26, 2024 on a federal arrest warrant. (*Id.* at 4.) The arresting officers seized a firearm (a Smith & Wesson MP Shield 380) and 111 fentanyl pills during the arrest. (*Id.*) Sergeant Moore knew that Mr. Reed was not eligible to possess a firearm due to two previous convictions. (*Id.*) The fentanyl pills were in a pill bottle with no label, which Sergeant Moore knew was consistent with narcotics distribution. (*Id.*) Sergeant Moore knew that people who sell narcotics and illegally possess firearms use social media platforms to conduct and promote their narcotics business and to protect their business and themselves by displaying firearms. (*Id.*) Investigators researched Mr. Reed's social media history and found his Facebook account, which displayed many profile photographs of Mr. Reed and public photographs of other individuals whom Sergeant Moore knew had weapons-related convictions. (*Id.*) The Facebook Warrant was issued on January 31, 2024.

### III. Mr. Reed's Motions to Suppress Evidence

The Fourth Amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. Whether probable cause exists to support the issuance of a search warrant "depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir. 2013)). A magistrate judge reviewing an application for a search warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [them] … there is a fair probability that contraband or evidence of a crime will be found in a a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Courts use a "totality of the circumstances test to determine whether probable cause exists." *United States v. Hager*, 710 F.3d 830, 836 (8th Cir. 2013) (citing *United States v. Gleich*, 397 F.3d 609, 612 (8th Cir. 2005)).

The task of a court reviewing another court's determination of probable cause "is simply to ensure that the [issuing] magistrate had a 'substantial basis for … conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *United States v. Jones*, 362 U.S. 257, 271 (1960)). Such a determination is accorded "great deference" by the reviewing court. *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016) (citing *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004)). In reviewing a supporting affidavit submitted to a magistrate judge by a law enforcement officer applying for a search warrant, "only that information which is found within the four corners of the affidavit may

6

be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005).

### A. Tracking Warrant for 763-340-xxxx (Gov't Ex. 1)

There can be no question that MPD's placing of a tracker on Mr. Reed's cellular phone and subsequent monitoring of his location for 16 days constitutes a search under the Fourth Amendment. *See Carpenter v. United States*, 585 U.S. 296, 311–12 (2018) ("[W]hen the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user."). Mr. Reed contends that the Tracking Warrant was not supported by probable cause.

#### 1. Significance of Mr. Reed's Outstanding Federal Arrest Warrant

In Mr. Reed's post-hearing brief, the defense characterizes Officer Werner's criminal investigation as one in which "a single paid confidential informant offered information to one Minneapolis Police Officer, who used that information as the sole basis for the tracker warrant" with "no independent corroboration by any officer, and no other CIs who gave similar information." (Def.'s Post-Hr'g Mem. Supp. Mot. Suppress Tracking Warrant at 5, Dkt. No. 38). Mr. Reed's characterization of the CRI's hearsay information as constituting the "sole basis for the . . . warrant" neglects to consider the fact that Officer Werner's affidavit includes more than one mention of Mr. Reed's active federal arrest warrant and specifically requests that the Tracking Warrant be granted "to arrest Reed for his outstanding Federal arrest warrant." (Gov't Ex. 1 at 5.)

Eighth Circuit precedent concerning the sufficiency of an outstanding arrest warrant in a magistrate judge's probable cause determination is scant. However, the issue was

recently confronted in this District in *United States v. Ellerman*. No. 22-cr-116, 2023 WL 111982 (D. Minn. Jan. 5, 2023) (Menendez, J.). In that case, as here, an arrest warrant was issued for the defendant because he had absconded from parole. *Id.* at *1. A court issued the police a tracking warrant for a cellular phone associated with the defendant and the police then used the location data gathered pursuant to the warrant to locate and arrest him. *Id.* The defendant, a convicted felon, was in possession of a firearm at the time of his arrest and was charged with violating 18 U.S.C. § 922(g)(1). *Id.* The defendant then moved to suppress evidence seized by the police incident to his arrest. *Id.*

Although the defendant's grounds for challenging the tracking warrant differed from those cited by Mr. Reed,[2] U.S. District Judge Katherine Menendez endorsed the proposition than an arrest warrant issued for probable cause will suffice, by itself, to constitute probable cause for a tracking warrant of the fugitive's cellular phone, stating that "[t]he Court agrees . . . that probable cause existed for the tracking warrant because there was probable cause for the arrest warrant." *Id.* at *3. In the absence of Eighth Circuit precedent, Judge Menendez favorably cited the Seventh Circuit's decisions in *United States v. Amaral-Estrada* and *United States v. Patrick*, which Judge Menendez characterized as "demonstrat[ing] that it is reasonable for law enforcement to use a tracking warrant . . . to

---

[2] In *Ellerman*, the defendant challenged the police's obtaining his cell-site location information as violating the Supreme Court's ruling in *Carpenter v. United States*. *United States v. Ellerman*, No. 22-cr-116, 2023 WL 111982, at *2 (D. Minn. Jan. 5, 2023). This argument was rejected by the court, which found that the application and affidavit submitted by the police to obtain the tracking warrant were distinguishable from the administrative subpoenas under the Stored Communications Act in *Carpenter*, which unlike the application and affidavit at issue, "neither demonstrated nor required a finding of probable cause." *Id.*

locate an individual who is wanted on a valid arrest warrant." *Id.* (citing *United States v. Amaral-Estrada*, 509 F.3d 820, 828–29 (7th Cir. 2007); *United States v. Patrick*, 842 F.3d 540, 545 (7th Cir. 2016)).

Within two months of the *Ellerman* decision, a court in the Eastern District of Missouri decided *United States v. Jackson*, No. 4:19-CR-322 RLW, 2023 WL 2299572 (E.D. Mo. Mar. 1, 2023). As with the defendants in *Reed* and *Ellerman*, a warrant was issued for Mr. Jackson's arrest, police sought a warrant that would enable them to use location data from a cell phone associated with Mr. Jackson in order to execute that warrant, and a magistrate judge granted the United States the requested warrant. *Id.* at *4–5. Unlike the defendants in *Reed* and *Ellerman*, defendant Jackson destroyed the target phone before police could use it to locate him. *Id.* at *6. However, police pinpointed its last known location and determined that Jackson was likely residing with an individual whom he had frequently used the target phone to contact. *Id.* When their hunch proved correct, police arrested Jackson, a convicted felon, and charged him with possession of a firearm he attempted to dispose of when captured. *Id.* at *7.

Like defendant Ellerman, defendant Jackson based his challenge to the tracking warrant issued to monitor his phone on a misreading of the Supreme Court's ruling in *Carpenter*. *Id.* at *11. In addition to rejecting that argument, the *Jackson* court noted that "Jackson's challenge to the Warrant . . . glosses over the fact that at the time it was issued, Jackson was a fugitive and subject to a valid Indiana state arrest warrant." *Id.* The court summarized the affiant officer's affidavit by stating that it "connects Jackson to [the] cellular phone . . ., demonstrates probable cause to believe the target phone was in

9

Jackson's possession, and demonstrates the existence of the arrest warrant." *Id.* This, the court concluded, established a "sufficient basis upon which to conclude that probable cause existed for issuance of the Warrant." *Id.*

Despite a dearth of binding precedent, this Court is satisfied that the existence of an active arrest warrant provides a sufficient basis for a magistrate judge to find probable cause to issue a tracking warrant allowing law enforcement to monitor a fugitive's location, and Mr. Reed has cited no authority to the contrary in this Circuit or any other. *See United States v. Ellerman*, No. 22-cr-116, 2023 WL 111982, at *3 (D. Minn. Jan. 5, 2023) ("Mr. Ellerman cites no authority for the idea that using a judicially approved tracking warrant to locate the subject of a lawful arrest warrant violates the Fourth Amendment, and the Court has found no cases that support such an argument.").

### 2. Association of Phone Number 763-340-xxxx with Mr. Reed

The warrant for his arrest notwithstanding, Mr. Reed's argument that "the tracking warrant is not supported by probable cause because it was based on an uncorroborated statement by a confidential informant" still applies to the association of Mr. Reed to the cellular phone with number 763-340-xxxx. (Def.'s Post-Hr'g Mem. Supp. Mot. Suppress Tracking Warrant at 1, Dkt. No. 38). That is, even if Mr. Reed had an active federal warrant for his arrest, this Court must determine whether the issuing magistrate judge had probable cause to believe that by tracking the cellular phone in question, police would also be tracking Mr. Reed's location.

The information contained in Officer Werner's affidavit connecting the cellular phone number 763-340-xxxx to Mr. Reed is, as the defense contends, based solely on the

10

word of the CRI that it was "Hyfee's cell phone number," and not independently corroborated by Werner or any other officer. However, independent corroboration is not the exclusive means by which law enforcement can demonstrate that information provided by an informant can cause an informant to be categorized as "reliable." Under Eighth Circuit precedent, "[w]hen an informant has provided reliable information in the past *or* where his tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination." *United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006) (citing *United States v. Leppert*, 408 F.3d 1039, 1041 (8th Cir. 2005)) (emphasis added). It is well established that an affiant officer's attestation that a confidential informant has provided accurate information in the past will suffice to support a determination of probable cause, even in the absence of independent corroboration of the informant's information by law enforcement. *See, e.g., United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998) ("The statements of a reliable confidential informant are themselves sufficient to support probable cause for a search warrant."); *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) ("Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information . . . ."); *United States v. Pressley*, 978 F.2d 1026, 1027 (8th Cir. 1992) ("It is well settled that the statements of a reliable informant can provide, by themselves, a sufficient basis for the issuance of a warrant.").

In his affidavit, Officer Werner attests to the reliability of the CRI whose information connected the cellular phone, number 763-340-xxxx, to Mr. Reed by stating that the CRI

"has provided information to law enforcement for the past several months . . . [which] has led to the recovery of narcotics, firearms, and US currency . . . [as well as] people being charged with narcotics and firearm crimes." (Gov't Ex. 1 at 4.) This Court therefore cannot but conclude that the issuing state court judge here had a sufficient basis upon which to conclude that there was probable cause to believe that the cellular phone, number 763-340-xxxx, was in the possession of Mr. Reed, who at that time had an active warrant for his arrest in the District of Minnesota.

Because the Court finds the tracker warrant's issuance by Judge Brennan was supported by probable cause, the Court need not consider Mr. Reed's argument that because Officer Werner applied for the warrant, he may not avail himself of *United States v. Leon*'s good faith exception. No authority other than *Leon* itself is cited in support of this argument, which, if granted, would limit the police officers within *Leon*'s scope to officers executing warrants applied for by other officers. There is no support for this argument, nor does the Supreme Court's *Leon* opinion contain any such limitation.

B.   **Facebook Warrant**

Mr. Reed argues that Sergeant Moore must have unlawfully searched his phone before obtaining a search warrant because the photos described in the Facebook warrant application were not publicly available and Mr. Moore's phone was not searched pursuant to warrant until about two weeks after the Facebook warrant was applied for and issued. This defense argument runs directly counter to Sergeant Moore's averment that he recognized many *public* photos of individuals posted on Mr. Reed's Facebook page. Had Mr. Reed come forward with evidence of his own that cast doubt on Sergeant Reed's

12

assertion, the Court would have considered it. However, the defense has brought up no evidence in support of their claim that Sergeant Moore must have searched Mr. Reed's phone without a warrant.

The applicability of the Fourth Amendment to a Facebook account "partly depends on a user's privacy settings." *United States v. Adkinson*, No. 415-CR-00025-TWP-VTW, 2017 WL 1318420, at *5 (S.D. Ind. Apr. 7, 2017). There is no expectation of privacy in a public Facebook page. *See id.*; *Chaney v. Fayette Cty. Pub. Sch. Dist.*, 977 F. Supp. 2d 1308, 1316 (N.D. Ga. 2013); *United States v. Devers*, No. 12-CR-50-JHP, 2012 WL 12540235, at *2–3 (N.D. Okla. Dec. 28, 2012); *United States v. Meregildo*, 883 F. Supp. 2d 523, 526 (S.D.N.Y. 2012). Accordingly, Mr. Reed had no reasonable expectation of privacy in the publicly available content on his Facebook page.

**IV.    Mr. Reed's Motion to Disclose and Make Informant Available for Interview**

Mr. Reed filed a motion requesting that the United States be required to disclose the identity of and make available for questioning by the defense the CRI who provided information to Officer Werner.

In deciding a motion to compel disclosure of a confidential informant, "[t]he court must weigh 'the defendant's right to information against the government's privilege to withhold the identity of its confidential informants.'" *United States v. Lapsley*, 334 F.3d 762, 763–64 (8th Cir. 2003) (quoting *United States v. Fairchild*, 122 F.3d 605, 609 (8th Cir. 1997)). Where this balancing weighs in favor of disclosure, "the [government's] privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60 (1957). The Eighth Circuit has held that "perhaps the most important factor . . . is whether the [informant's] . . . information

13

is material to the defense." *Lapsley*, 334 F.3d at 764. However, "[i]n cases involving 'tipsters' who merely convey information to the government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required." *United States v. Harrison*, 951 F.2d 876, 878 (8th Cir. 1991) (citing *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987)).

The defense correctly points out that they "bear[] the burden of demonstrating a need for disclosure." *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998). This requires that Mr. Reed "establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *United States v. Blair*, 93 F.4th 1080, 1084 (8th Cir. 2024) (citing *Harrison*, 951 F.2d at 877). Here, Mr. Reed attempts to satisfy this initial showing by alleging that "the CI never saw him with a gun and is lying for the sake of earning money from the police department." (Def.'s Post-Hr'g Mem. Disclose Informant at 4, Dkt. No. 39.) "Given the chance to question the CI," Mr. Reed claims, "the CI's statement would prove to be a fabrication." (*Id.*)

The truthfulness of the CRI's statement to Officer Werner that he witnessed Mr. Reed "in possession of a semiautomatic handgun with an extended magazine" sometime within the previous three days is not material to Mr. Reed's defense, even speculatively. Mr. Reed is charged with a violation of 18 U.S.C. § 922(g)(1) not because of the CRI's statement to Officer Werner that Mr. Reed possessed a firearm sometime between January 7 and January 10, 2024, but because he was in possession of a firearm at the time of his arrest on January 26, 2024 (an event which the CRI did not witness and for which he was not present). Proving the CRI's statement to be false would, at most, provide the defense

14

with a basis to file a motion challenging the Tracking Warrant under *Franks v. Delaware*, 438 U.S. 154, 171–72 (1978). It is not necessary to speculate here whether the probable cause determination would withstand a showing by Mr. Reed that the CRI's statement to Officer Werner was false. It will suffice to conclude that the truth or falsity of that statement is not "material to the defense," and that disclosure is therefore unwarranted. *United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003).

## V. Conclusion

Therefore, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Mr. Reed's Motion to Suppress Evidence Obtained as a Results of a Search and Seizure (Dkt. No. 25) be **DENIED**; and

2. Mr. Reed's Motion to Suppress Evidence Obtained as a Result of Unlawful Search and Seizure – Tracking Warrant (Dkt. No. 28) be **DENIED**.


**IT IS FURTHER ORDERED** that Mr. Reed's Motion to Compel Disclosure of Confidential Informant (Dkt. No. 27) is **DENIED**.


Date:  September 26, 2024         */s/ John F. Docherty*
                                  JOHN F. DOCHERTY
                                  United States Magistrate Judge


### Notice

**Filing Objections:** The Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of

Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).